# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| THE NOCO COMPANY, INC.,<br>30339 Diamond Parkway #102<br>Glenwillow, Ohio 44139<br><br>    Plaintiff,<br><br>v.<br><br>SHENZHEN CARKU TECHNOLOGY CO., )<br>LTD.,<br>Building A<br>Qixing Creative Square<br>Lianrun Rd.<br>Gaofeng Community<br>Dalang Street<br>Longhua New District, Shenzhen<br>Guangdong, China 518109<br><br>    Defendant. | Case No. 1-21-cv-2319<br><br>JUDGE _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff The NOCO Company, Inc. ("NOCO"), for its complaint against Defendant Shenzhen Carku Technology Co., Ltd. ("Defendant"), alleges as follows:

### Nature of the Action

1. This is an action arising out of Defendant's tortious interference with NOCO's contract with a Chinese manufacturer.

### Parties

2. Plaintiff NOCO is an Ohio corporation having its principal place of business at 30339 Diamond Parkway #102, Glenwillow, Ohio 44139.

3.      NOCO is a privately held family company that was founded in the United States over 100 years ago. Joseph H. Nook, a tire and battery distributor from Cleveland, Ohio, founded The NOCO Company in 1914. Mr. Nook set out to develop a product that would prevent battery corrosion. After several hundred different formulations, Mr. Nook began commercially manufacturing and distributing the world's first Battery Corrosion Preventative that he called "NCP2," which is an acronym for "No Corrosion Product" which is applied in "2 Steps." The NCP2 brand quickly became a household name in every major battery and automotive shop. For over 100 years, the NCP2 brand has been preventing battery corrosion on over a billion vehicles and applications worldwide.

4.      Today, NOCO, still owned and managed by the Nook family, remains a leading innovator in the automotive battery industry, and designs and manufactures premium consumer battery chargers, jump starters, solar panels, and portable power devices as well as a wide range related battery products and accessories.

5.      NOCO designs its products in the United States and contracts its manufacture to foreign manufacturers.

6.      On information and belief, Defendant is a Chinese corporation that is organized and existing under the laws of China and has a principal place of business located at Building A, Qixing Creative Square, Lianrun Rd., Gaofeng Community, Dalang Street, Longhua District, Shenzhen, Guangdong, China 518109.

7.      On information and belief, Defendant is in the business of manufacturing jump starters in China. Defendant sells jump starters that infringe NOCO's patents.

**Jurisdiction and Venue**

8. The subject matter jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332 as this action is between a citizen of Ohio and a citizen of a foreign state, the citizen of the foreign state has not been lawfully admitted for permanent residence in the United States, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

9. It is well-established that a federal court sitting in diversity jurisdiction should apply the long-arm statute of the state in which it sits. Ohio's long-arm statute provides that "[a] court may exercise personal jurisdiction" where a defendant has "caus[ed] tortious injury in [Ohio] by an act outside [Ohio] committed with the purpose of injuring persons, when the [defendant] might reasonably have expected that some person would be injured thereby in [Ohio]." O.R.C. § 2307.382(A)(6). Defendant's actions as alleged in this Complaint were knowingly and deliberately directed at NOCO in Ohio, were intended to cause harm to NOCO in Ohio, and have, in fact, caused harm to NOCO in Ohio. Defendant has knowledge of NOCO's connections to Ohio and understood that the conduct about which NOCO complains would—and in fact, did—have consequences for NOCO in Ohio. NOCO's losses, caused by Defendant's tortious conduct, were suffered in Ohio. Accordingly, the personal jurisdiction of this Court over Defendant is proper pursuant to O.R.C. § 2307.382(A)(6).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3) because Defendant is not resident in the United States and is therefore subject to venue in any judicial district of the United States Courts.

**Background**

**NOCO and Its NOCO Boost® Jump Starter**

11. NOCO designs and manufactures, among other products, portable battery jump starter packs that allow users to safely jump start cars, boats, motorcycles, and more without connecting to another vehicle. NOCO's jump starters include safety features that prevent injury to the user and damage to the battery being jump started.

12. Since the early days of automobiles, the prevalent method to recharge a dead car battery has been through the use of "jumper cables," where two cables are run from a live battery in a running vehicle to a dead battery of a second vehicle. The many problems associated with jumper cables are well known, including the fact that a second car with a live battery is needed to perform a jump start, and the danger of sparking and short circuits, especially when the cables from the live battery to the dead battery are misconnected (referred to as "reverse polarity") or not fully connected.

13. Numerous efforts to improve the jump-starting process have been undertaken over the years, most of which have had significant deficiencies such as lack of portability or failure to solve safety problems and did not achieve significant popularity.

14. The advent of lithium-ion batteries has permitted the introduction of compact jump starters that do not require the use of a second vehicle, providing consumer convenience as well as certain safety advantages over prior jump-starting devices.

15. In 2014, NOCO introduced the NOCO Boost® lithium jump starter, which incorporates the patented safety features described herein. A photograph of one model of the NOCO Boost® jump starters jumping a dead battery is shown below, and a video demonstrating

how the NOCO Boost® operates can be found at https://www.youtube.com/watch?v=QULcgAZUs0Y.



Fig. 1- NOCO Boost® Pro™ (GB150)- 3,000A Jump Starter

16. The products at issue here include the entire line of NOCO Boost® jump starters, namely, the NOCO Boost® Sport™, NOCO Boost® Plus™, NOCO Boost® XL™, NOCO Boost® HD™, NOCO Boost® Pro™, and NOCO Boost® Max™.

17. The NOCO Boost® jump starters are ultra-portable, lightweight, and compact. They outperform traditional lead-acid battery booster packs at a fraction of the size and weight. The NOCO Boost® jump starters provide users a safe and easy-to-use car battery jump starter pack without the worry of incorrect connections or sparks. NOCO Boost® jump starters safely connect to any 12-volt vehicle battery due to NOCO's patented, mistake-proof design featuring spark-proof technology and reverse polarity protection. All NOCO Boost® jump starters also feature a 2.1A USB output port to power any USB device, and an LED flashlight with 7 light

modes, including SOS and Emergency Strobe. NOCO offers six NOCO Boost® models, which provide a range from 500A to 20,000A for a wide variety of vehicle batteries and applications.

18. Since its introduction, the NOCO Boost® has become known for its safety, ease of use, and reliability, among other features. As a result, the NOCO Boost® has enjoyed tremendous popularity, becoming one of the, if not the, market-leading compact lithium jump starters in the United States.

19. NOCO holds patents and pending patent applications for its NOCO Boost® products, two of which include U.S. Patent Nos. 9,007,015 and 10,604,024 (the "NOCO Safety Patents"). The NOCO Safety Patents relate to an improved portable jump starter incorporating a rechargeable lithium-ion battery and a microcontroller. The Boost® Safety Patents also describe a novel apparatus that incorporates a power switch actuated by a microcontroller such that power will be delivered from the lithium-ion power pack to the output port only when the battery is connected to the output port and only when the battery is connected with the proper polarity of positive and negative terminals. This solves the problem of sparking or potential damage to the battery and/or bodily injury when the jumper terminals or clamps of the cables were inadvertently brought in contact with each other, or when positive and negative terminals were connected to the opposite polarity terminals in the vehicle to be jumped. While other jump starters purport to provide the same safety features as those incorporated into NOCO Boost® products, NOCO's patented design offers a more robust safety system that has contributed significantly to the enormous commercial success of those products. That is why, as discussed in more detail below, numerous manufacturers, including Defendant, have adopted that same system, thus infringing upon NOCO's intellectual property rights.

**NOCO's Manufacture of the NOCO Boost® Jump Starter**

20. Since 2014, NOCO has contracted with Chinese factory owners to manufacture NOCO's Boost® jump starters at factories in China.

21. One manufacturing facility in China produces a significant portion of NOCO's Boost® jump starters ("Manufacturer A")[1].

22. NOCO first executed a contract with Manufacturer A in 2017 ("Manufacturing Contract"). Pursuant to the Manufacturing Contract, Manufacturer A agreed to manufacture NOCO's Boost® jump starters in its Chinese facility and then ship the same to NOCO in the United States for sale in the American market, as well as to other countries for sale in foreign markets.

23. The Manufacturing Contract has continued uninterrupted from 2017 through the date of the present filing.

24. Throughout the course of the Manufacturing Contract, Manufacturer A has shipped at least hundreds of thousands of NOCO Boost® jump starters from China to the United States and elsewhere. Prior to Defendant's tortious interference with the Manufacturing Contract described below, the General Administration of Customs of the People's Republic of China ("Chinese Customs Authorities") never placed a hold on any export from Manufacturer A to NOCO, nor did the Chinese Customs Authorities ever require Manufacturer A or NOCO to post any bond for the release of such exports.

---

[1] The identity of Manufacturer A constitutes highly sensitive commercial information. Accordingly, NOCO will provide Manufacturer A's identity after appropriate protections are in place pursuant to a forthcoming Motion for Protective Order.

**Defendant's Tortious Conduct**

25. NOCO has achieved enormous, transformational success with its invention and sale of NOCO Boost® jump starters. This success has attracted patent infringers such as Defendant to produce copycat products that mimic the patented safety system of NOCO's Boost® jump starters.

26. Despite NOCO's ownership of patents protecting NOCO's Boost® jump starters, Defendant and others make, use, offer to sell, and/or import jump starters that infringe NOCO's Boost®-related patents.

27. As a result of the large-scale infringement of NOCO products by Defendant and others, NOCO has been compelled to file several patent infringement lawsuits before U.S. District Courts as to NOCO's U.S. patents, as well as lawsuits in Canada, the United Kingdom, and Germany as to foreign counterparts of NOCO's U.S. patents.

28. With the widespread infringement of NOCO's patents continuing, in January 2021 NOCO initiated an unfair importation proceeding pursuant to Section 337 of the Tariff Act of 1930 (19 U.S. Code § 1337) before the United States International Trade Commission (the "ITC Action"). Among the parties named as Respondents in the ITC Action are Defendant and several of Defendant's customers.

29. Defendant, in a transparent attempt to coerce NOCO to cease its efforts to protect the intellectual property underlying the NOCO Boost® jump starters, decided to try to disrupt NOCO's supply chain by asserting objectively baseless patent infringement proceedings against NOCO's jump starters in China.

30. Defendant commenced its objectively baseless patent infringement proceedings in September 2021 by causing the Chinese Customs Authorities to seize a shipment of NOCO jump starters manufactured by Manufacturer A that were in the process of being exported out of China.

Defendant's petition to the Chinese Customs Authorities was based on an allegation that the jump starters infringe Chinese Patent Number CN 201511032375.7, which is assigned to Defendant (the "Chinese Patent").

31. Defendant also brought a patent infringement lawsuit against Manufacturer A in the Intellectual Property Court of the Supreme People's Court of China (Guangzhou). In the lawsuit, Defendant alleges again that Manufacturer A infringes Defendant's Chinese Patent by manufacturing NOCO's Boost® jump starters.

32. Defendant's patent infringement actions in China are objectively baseless because Defendant knows that the Chinese Patent cannot possibly be valid if it covers the accused NOCO Boost® jump starters. This is because, as a major worldwide supplier of jump starters, Defendant knows that NOCO jump starters having the same design as the accused jump starters were marketed and sold long before Defendant filed the December 31, 2015 application resulting in the Chinese Patent. NOCO's Boost® jump starters are therefore "prior art" to Defendant's Chinese Patent. This means that either the claims of the Chinese Patent are invalid if they cover the accused NOCO jump starters, or they cannot cover those jump starters: it has to be one or the other, and Defendant knew that when it brought the patent infringement proceedings.

33. In order to overcome the Chinese Customs Authorities' seizure and release its own patent-protected products for export, NOCO has been forced to incur substantial costs, including, among other things, funding the posting of a bond, funding payment of storage costs charged by the Chinese Customs Authorities while Manufacturer A's shipment was detained, and indemnifying Manufacturer A for the legal defense of Defendant's objectively baseless patent infringement proceedings.

34. Because the threat of further export seizures looms heavy, NOCO has been forced to redeploy planned Chinese manufacturing to manufacturers in other countries, at great cost and disruption.

35. As a result of the held seizure, the delay in receipt of products, the plans and implementation of the redeployment of manufacturing processes, the management distraction caused by Defendant's bad faith litigation, and the various costs associated with all of these injuries, NOCO has suffered significant financial loss as a result of Defendant's tortious interference with the Manufacturing Contract, and will continue to incur great costs as Defendant's objectively baseless patent infringement proceedings move forward.

## Claim

### Tortious Interference with the Manufacturing Contract

36. NOCO incorporates as if fully rewritten herein each and every averment set forth above.

37. NOCO executed the Manufacturing Contract with Manufacturer A in 2017. The Manufacturing Contract has been continuously operative since its inception through and including the date of the present filing.

38. Defendant had knowledge of the Manufacturing Contract at the time it filed the objectively baseless proceeding with the Chinese Customs Authorities and the subsequent objectively meritless patent infringement suit. Defendant gained knowledge of this information despite NOCO's reasonable efforts to keep its relationship and corresponding contract with Manufacturer A confidential. Defendant undertook these actions specifically for the purpose of preventing Manufacturer A from exporting NOCO's Boost® jump starters and disrupting NOCO's business.

39. Because Defendant's lawsuit and Chinese Customs Authorities proceeding against Manufacturer A are objectively baseless, it is legally clear that NOCO has in no way infringed Defendant's Chinese Patent. Accordingly, Defendant has no justification for either the lawsuit or the Chinese Customs Authorities proceeding—both of which have interfered with the Manufacturing Contract as set forth herein.

40. As a result of Defendant's interference with the Manufacturing Contract, NOCO has faced costly disruptions to its supply chain, suffered significant costs as a result of the unwarranted seizure of the NOCO Boost® jump starters and the need to redeploy manufacturing processes, and incurred substantial legal fees to protect its supply chain.

### **Prayer for Relief**

WHEREFORE, NOCO prays for judgment as follows:

41. that Defendant be found to have tortiously interfered with the Manufacturing Contract;

42. that Defendant; its officers, directors, employees, agents, and affiliated entities; and all other parties in active participation or privity with it, be preliminarily and permanently enjoined from further interference with the Manufacturing Contract;

43. that Defendant be ordered to pay NOCO damages adequate to compensate NOCO for its injuries as set forth herein;

44. that NOCO be awarded punitive damages; and

45. that NOCO have such other and further relief as this Court may deem just and proper.

## **Jury Demand**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, NOCO demands trial by jury for all claims and issues thus triable by right.

Respectfully submitted,

*/s/ Michael J. Garvin*
Michael J. Garvin (0025394)
Marcel C. Duhamel (0062171)
Vorys, Sater, Seymour and Pease LLP
200 Public Square
14th Floor
Cleveland, Ohio 44114
Ph: (216) 479-6100
Fax: (216) 479-6060
mjgarvin@vorys.com
mcduhamel@vorys.com

Attorneys for Plaintiff The NOCO Company, Inc.